CHIN, J., Concurring and Dissenting.
In Sonic-Calabasas A, Inc. v. Moreno (2011) 51 Cal.4th 659, 669 [121 Cal.Rptr.3d 58, 247 P.3d 130] (Sonic I), a bare four-to-three majority of this court held that the arbitration provision here at issue is both contrary to our state’s public policy and unconscionable—and therefore unenforceable—to the extent it precludes Frank Moreno from pursuing an administrative hearing—-known as a “Berman hearing”— before submitting his claim for vacation pay to arbitration. I agree with the majority’s conclusion that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) preempts" Sonic /’ s public policy rationale. However, I disagree with the majority’s decision to remand this case on the issue of unconscionability. As I explain below, we should reject Moreno’s unconscionability claim for two reasons: (1) he forfeited it by failing to raise and pursue it below and (2) he has not met, and cannot meet, his burden of showing unconscionability. I also disagree with the majority’s advisory opinion regarding the unconscionability principles the trial court should apply on remand. In my view, those principles are both contrary to state law and invalid under—and thus preempted by—the FAA. I dissent from this aspect of the majority’s opinion and from the judgment.
I. Factual Background.
Frank Moreno was an employee of Sonic-Calabasas A, Inc. (Sonic). In December 2006, after voluntarily ending his employment, he filed a wage claim with the Labor Commissioner pursuant to Labor Code section 98 *1174 et seq.[1] seeking allegedly unpaid “vacation wages” for 63 days at the rate of $441.29 per day. He also requested “additional wages accrued pursuant to Labor Code Section 203 as a penalty.”
In February 2007, Sonic filed in the superior court a petition to compel arbitration of Moreno’s claim and to dismiss his pending administrative action. It relied on the broad and comprehensive arbitration provision in an agreement Moreno signed on July 14, 2002, which provides in relevant part: “I . . . acknowledge that [Sonic] utilizes a system of alternative dispute resolution that involves binding arbitration to resolve all disputes that may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both [Sonic] and myself, both [Sonic] and I agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment . . .) that either I or [Sonic] . . . may have against the other which would otherwise require or allow resort to any court or other governmental dispute resolution forum arising from, related to, or having any relationship or connection whatsoever with my seeking employment With, employment by, or other association with [Sonic], whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act . . . , claims for medical and disability benefits under the California Workers Compensatipn Act, and Employment Development Department claims) shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec. 1280 et seq., including section 1283.05 and all of the Act’s other mandatory and permissive rights to discovery). However, nothing herein shall prevent me from filing and pursuing- administrative proceedings only before the California Department of Fair Employment and Housing, or the U.S. Equal Opportunity Commission.”
Moreno and the Labor Commissioner, who intervened on Moreno’s behalf, opposed Sonic’s motion to compel. They argued that, insofar as the arbitration agreement deprives Moreno of the benefits of the Berman procedure, it is unenforceable as against public policy.
The superior court denied the petition to compel arbitration, agreeing that the arbitration provision violates public policy insofar as it waives Moreno’s right to pursue a Berman hearing. The Court of Appeal reversed, finding “no evidence” in the record “that Moreno or any other wage claimant lacks the knowledge, skills, abilities, or resources to vindicate his or her statutory rights in an arbitral forum.”
*1175 As noted above, in Sonic I, a narrow majority of this court held that the arbitration provision is both contrary to our state’s public policy and unconscionable—and therefore unenforceable—to the extent it precludes Moreno from pursuing a Berman hearing before submitting his claim for vacation pay to arbitration. (Sonic I, supra, 51 Cal.4th at p. 669.) The United States Supreme Court granted certiorari, vacated the judgment, and remanded the case to us for consideration in light of AT&T Mobility LLC v. Concepcion (2011) 563 U.S. __ [179 L.Ed.2d 742, 131 S.Ct. 1740] (Concepcion).
II. The FAA Preempts Sonic I’j Public Policy Rationale.
In my dissent in Sonic I, I explained that the FAA, under the United States Supreme Court’s binding interpretation of that statute, preempts the Sonic I majority’s public policy rationale. (Sonic I, supra, 51 Cal.4th at pp. 706-712 (dis. opn. of Chin, J.).) After we decided Sonic I, the high court held in Concepcion that the FAA preempts the California rule, announced by another four-to-three majority of this court in Discover Bank v. Superior Court (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (Discover Bank), that certain waivers of classwide arbitration procedures are unconscionable and unenforceable. (Concepcion, supra, 563 U.S. at pp. __-__ [131 S.Ct. at pp. 1747-1748].) Concepcion confirms my discussion in Sonic I. I therefore agree with the majority that the FAA preempts Sonic Fs public policy rationale.
III. Moreno Has Forfeited His Unconscionability Claim.
As the majority acknowledges (maj. opn., ante, at pp. 1149-1150), because unconscionability is a contract defense, the party resisting enforcement of an arbitration provision has the burden of proving unconscionability. (Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC (2012) 55 Cal.4th 223, 236 [145 Cal.Rptr.3d 514, 282 P.3d 1217] (Pinnacle).) In light of this principle, both this court and our Courts of Appeal have held that a party resisting arbitration forfeits the defense of unconscionability by failing to pursue it in the trial court. (Pearson Dental Supplies, Inc. v. Superior Court (2010) 48 Cal.4th 665, 681 [108 Cal.Rptr.3d 171, 229 P.3d 83]; Mastick v. TD Ameritrade, Inc. (2012) 209 Cal.App.4th 1258, 1266-1267 [147 Cal.Rptr.3d 717].)
The record here supports application of this forfeiture rule to Moreno’s unconscionability claim. At no point in the trial court did Moreno claim that the arbitration provision here is “unreasonably one-sided in favor of the employer.” (Maj. opn., ante, at p. 1125.) He did allege in his response to Sonic’s petition to compel that the arbitration provision is unconscionable because it “fails to provide an arbitral forum in which employees can fully *1176 and effectively vindicate their statutory rights to recover unpaid wages.” However, he did nothing further in the trial court to pursue either this or any other unconscionability defense. In his briefs, he did not, as the majority asserts, argue that the Berman waiver “was per se unconscionable.” (Maj. opn., ante, at p. 1158.) Rather, he argued only that the arbitration provision violates public policy. Nor did he assert unconscionability in the Court of Appeal, in the petition for review he filed in this court, or in the opening and reply briefs he filed with us. In fact, Moreno never mentioned unconscionability again until well after briefing closed in this court, when we resurrected the issue by asking the parties to discuss it in supplemental briefs. On this record, Moreno has forfeited the claim that the arbitration provision is unconscionable. The majority fails to explain why it does not apply the forfeiture rule and why it is giving Moreno a second chance “to develop” a defense that, as the majority acknowledges, he “chose” to abandon below as a matter of litigation strategy. (Maj. opn., ante, at pp. 1158-1159.)
IV. Under Existing California Law, the Arbitration Provision Is Not Unconscionable.
Were it either necessary or appropriate to reach the unconscionability claim Moreno is now asserting, under existing California law, I would reject it.
Civil Code section 1670.5, subdivision (a), authorizes a court, upon finding “as a matter of law” that a “contract or any clause of the contract” was “unconscionable at the time it was made,” to “refuse to enforce the contract,” to “enforce the remainder of the contract without the unconscionable clause,” or to “so limit the application of any unconscionable clause as to avoid any unconscionable result.” The official Assembly comment accompanying this section explains: “The basic test [of unconscionability] is whether, in the light of the general background and the needs of the particular case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of prevention of oppression and unfair surprise [citation] and not of disturbance of allocation of risks because of superior bargaining power.” (Rep. on Assem. Bill No. 510 (1979-1980 Reg. Sess.) 5 Assem. J. (1979-1980 Reg. Sess.) p. 9231, reprinted as Legis. Com. com., 9 West’s Ann. Civ. Code (2011 ed.) foil. § 1670.5, p. 74 (Official Comment).) Consistent with this comment, we recently reaffirmed in the context of determining the validity of an arbitration provision that “[a] contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be ‘so one-sided as to “shock the conscience.” ’ [Citation.]” (Pinnacle, supra, 55 Cal.4th at p. 246.)
Under these principles, the arbitration provision at issue here is not unconscionable. As the majority notes, in evaluating a claim that a contract is *1177 unconscionable, we look to the parties’ “overall” agreement, not to a single aspect of the agreement in isolation. (Maj. opn., ante, at p. 1157.) The agreement at issue here is not simply a Berman waiver, and does not target the Berman procedure. Rather, it is a broad, bilateral arbitration provision that applies, with certain exceptions, to “all disputes” between the parties “aris[ing] out of the employment context . . . that either [party] may have against the other.” As Sonic observes, this provision “does not inequitably exempt the employer from arbitration of claims more likely to be brought by an employee.” On the contrary, to the extent the provision lacks mutuality, it favors Moreno, by excluding claims that are generally brought by employees. That Moreno’s wage claim is not one of those excluded claims does not render the arbitration provision as a whole one-sided in Sonic’s favor, let alone “ ‘so one-sided as to “shock the conscience.” ’ [Citation.]” (Pinnacle, supra, 55 Cal.4th at p. 246.)
Supporting my conclusion is this court’s decision in Little v. Auto Steigler, Inc. (2003) 29 Cal.4th 1064 [130 Cal.Rptr.2d 892, 63 P.3d 979]. There, a terminated employee sued his former employer for tortious demotion and termination in violation of public policy, breach of an implied contract of continued employment, and breach of the implied covenant of good faith and fair dealing. (Id. at p. 1069.) The employer moved to compel arbitration under a provision that, like the one now at issue, specified that the arbitrator must be a retired California superior court judge and made applicable the ordinary civil rules of pleading, rules of evidence, and resolution of disputes by motions. (Id. at pp. 1069-1070.) The majority rejected the argument that “incorporation of [these] legal formalities into” the arbitration procedure rendered the arbitration agreement “unconscionable,” explaining: “Without more, ... we cannot say that these provisions, which make arbitration more closely follow judicial procedures, are unconscionably one-sided. It is not at all obvious that such provisions would inordinately benefit [the employer] rather than [the employee].” (Little, supra, 29 Cal.4th at p. 1075, fn. 1.) A similar conclusion is appropriate here.
V. The Majority’s Test for Unconscionability Is Vague, Unworkable, and Inconsistent with Existing California Law.
The majority believes that Moreno, who made no attempt in the trial court to show unconscionability, should nevertheless have a second chance. After concluding that, under the FAA, “unconscionability remains a valid defense to a petition to compel arbitration” (maj. opn., ante, at p. 1142), the majority reasons that, because Moreno did not “develop[]” his unconscionability claim below (maj. opn., ante, at p. 1125), remand is appropriate so the trial court can consider that claim “in the first instance” (maj. opn., ante, at p. 1172). Because this conclusion “is decisive of the appeal” (Stockton Theatres, Inc. v. *1178 Palermo (1956) 47 Cal.2d 469, 474 [304 P.2d 7]), the majority’s lengthy discussion of various principles and factors it believes should “properly inform” the trial court’s “unconscionability inquiry” (maj. opn., ante, at p. 1149), which the majority offers “to guide the parties and the trial court on remand” (id. at p. 1159), is “obiter dictum” and is not “the law of the case” (Stockton Theatres, Inc. v. Palermo, supra, at p. 474).
Moreover, there are numerous problems with the majority’s dicta, starting with its articulation of the general unconscionability standard. According to the majority, the trial court may declare the arbitration provision unconscionable upon finding that it is “unreasonably one-sided in favor of the employer.” (Maj. opn., ante, at p. 1125.) If, by this, the majority means “ ‘so one-sided as to “shock the conscience” ’ ” (Pinnacle, supra, 55 Cal.4th at p. 246), then, as discussed above, I agree. And, as explained above, the arbitration agreement is not so one-sided as to shock the conscience simply because it fails to exclude wage claims from the otherwise broad agreement to arbitrate all claims either party may have against the other.
However, if, by “unreasonably one-sided,” the majority means something less, then I disagree. As our Courts of Appeal have consistently recognized, the phrase “shock the conscience” is not, as the majority suggests (maj. opn., ante, at pp. 1145, 1159-1160), “synonymous with ‘unreasonable.’ Basing an unconscionability determination on the reasonableness of a contract provision would inject an inappropriate level of judicial subjectivity into the analysis. ‘With a concept as nebulous as “unconscionability” it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience.’ [Citations.]” (Morris v. Redwood Empire Bancorp (2005) 128 Cal.App.4th 1305, 1322-1323 [27 Cal.Rptr.3d 797], quoting American Software, Inc. v. Ali (1996) 46 Cal.App.4th 1386, 1391 [54 Cal.Rptr.2d 477]; see Walnut Producers of California v. Diamond Foods, Inc. (2010) 187 Cal.App.4th 634, 647-648 [114 Cal.Rptr.3d 449]; Belton v. Comcast Cable Holdings, LLC (2007) 151 Cal.App.4th 1224, 1247 [60 Cal.Rptr.3d 631]; Aron v. U-Haul Co. of California (2006) 143 Cal.App.4th 796, 809 [49 Cal.Rptr.3d 555]; Wayne v. Staples, Inc. (2006) 135 Cal.App.4th 466, 483 [37 Cal.Rptr.3d 544]; Koehl v. Verio, Inc. (2006) 142 Cal.App.4th 1313, 1340 [48 Cal.Rptr.3d 749]; California Grocers Assn. v. Bank of America (1994) 22 Cal.App.4th 205, 214-215 [27 Cal.Rptr.2d 396].)
Unfortunately, it appears the majority does, in fact, mean something less. Early in its opinion, the majority indicates that whether the arbitration provision is unconscionable turns on “[t]he fundamental fairness of the bargain,” which “depend[s] on what benefits the employee received under the *1179 agreement’s substantive terms and the totality of circumstances surrounding the formation of the agreement.” (Maj. opn., ante, at p. 1125.) Later, the majority indicates that the key question is whether the agreement is “ ‘unreasonably favorable to one party.’ ” (Maj. opn., ante, at p. 1148.) These formulations seem tantamount to asking whether the arbitration provision was a bad bargain, and thus are inconsistent with our statement in Pinnacle that a contract term is not substantively unconscionable merely because it “gives one side a greater benefit.” (Pinnacle, supra, 55 Cal.4th at p. 246.) They are also inconsistent with the Legislature’s intent in enacting the unconscionability statute, Civil Code section 1670.5, subdivision (a), which was to prevent oppression and unfair surprise, “not [to] disturb [] [the] allocation of risks because of superior bargaining power.” (Off. Com., 9 West’s Ann. Civ. Code, supra, foll. § 1670.5, p. 74.) And, they endorse the subjective “unreasonableness” standard that, as explained above, California courts have consistently rejected.
In the end, the majority, though purporting to provide guidance to the trial court, refuses to say precisely what standard the court should apply on remand in determining unconscionability. Instead, after asserting that our case law “does not indicate” whether the shock the conscience standard is “different” from the many other standards the majority puts forth, or “is the one true, authoritative standard for substantive unconscionability, exclusive of all others” (maj. opn., ante, at p. 1159), the majority declines to decide these questions and leaves it to the trial court to determine which of the majority’s “nonexclusive formulations” to apply (maj. opn., ante, at p. 1160). In my view, Pinnacle settles the question; the arbitration provision at issue is unconscionable only if it is so one-sided as to shock the conscience. (Pinnacle, supra, 55 Cal.4th at p. 246.)
The majority’s dicta regarding how the general unconscionability standard should be applied in this specific case is also problematic. The majority offers a number of different formulations, indicating that the arbitration agreement’s validity turns, variously, on whether the arbitration procedure (1) will enable Moreno to “vindicate his right to recover unpaid wages” (maj. opn., ante, at p. 1142) or “obtain prompt, affordable, and enforceable resolution of [his] wage claim” (maj. opn., ante, at p. 1147); (2) will “impose[] costs and risks . . . that make the resolution of the wage dispute inaccessible and unaffordable, and thereby ‘effectively blocks every forum for . . . redress’ ” (id. at p. 1148); and (3) will provide “an effective and low-cost approach to resolving wage disputes” (id. at p. 1147), a “speedy, informal, and affordable resolution” of Moreno’s wage claim (maj. opn., ante, at p. 1149), or an “accessible” and “affordable” forum for resolving his wage dispute (maj. opn., ante, at pp. 1147-1148, 1149). These terms are hopelessly vague, uncertain, and subjective. The majority offers no clue as to what it means to *1180 be “accessible,” “affordable,” “low-cost,” “speedy,” or “effective,” and concedes that these terms “are not subject to precise definition.” (Maj. opn., ante, at p. 1163.) Nor does the majority specify whether the arbitration procedure is to be judged on these measures in the abstract, relative to litigation, or relative to the Berman procedure.
Even were these terms capable of precise definition, the inquiry necessary to apply them would be difficult, if not impossible. Under our law, a determination of unconscionability must be based on the circumstances that existed “at the time [the contract] was made” (Civ. Code, § 1670.5, subd. (a)), not on hindsight in light of subsequent events (Setzer v. Robinson (1962) 57 Cal.2d 213, 217 [18 Cal.Rptr. 524, 368 P.2d 124]; Colton v. Stanford (1890) 82 Cal. 351, 403 [23 P. 16]). Accordingly, under the majority’s approach, a trial court, in determining accessibility and affordability, will have to determine, not what Moreno can afford today, but what he could have afforded at the time he signed the arbitration agreement. (Parada v. Superior Court (2009) 176 Cal.App.4th 1554, 1583 [98 Cal.Rptr.3d 743] (Parada).)[2] It will also have to determine, not how an arbitration would be conducted today, but how it would have been conducted at the time the parties signed the arbitration agreement. (O’Hare v. Municipal Resource Consultants (2003) 107 Cal.App.4th 267, 281-282 [132 Cal.Rptr.2d 116].) Moreover, whether the inquiry looks to the present or to the future, a court simply cannot perform the task the majority assigns it: determining “the particulars” of Sonic’s arbitration process that the agreement does not “reveal.” (Maj. opn., ante, at p. 1147.) The particulars of an arbitration process that are not specified in the arbitration agreement or the applicable arbitration rules are for the arbitrator, not the court, to decide (Howsam v. Dean Witter Reynolds, Inc. (2002) 537 U.S. 79, 84 [154 L.Ed.2d 491, 123 S.Ct. 588] [procedural questions are for the arbitrator]), and arbitrators have broad discretion in determining the procedures and law governing the arbitration, including their contractual authority to fashion remedies (Advanced Micro Devices, Inc. v. Intel Corp. (1994) 9 Cal.4th 362, 376 [36 Cal.Rptr.2d 581, 885 P.2d 994]; Sanchez v. Western Pizza Enterprises, Inc. (2009) 172 Cal.App.4th 154, 177 [90 Cal.Rptr.3d 818]). Thus, until the parties here actually submit the matter to arbitration and the arbitrator determines the arbitration procedures, a trial court cannot know all “the particulars” of the specific arbitration process now at issue (maj. opn., ante, at p. 1147) and, therefore, cannot consider those features in determining unconscionability.
Equally, if not more, problematic is the majority’s view that, in determining unconscionability, a trial court may consider “the value of’ the benefits under the Berman procedure that Moreno has surrendered. (Maj. opn., ante, *1181 at p. 1149.) To begin with, as the majority’s introductory discussion explains, an employee has no entitlement to a Berman hearing; upon receiving a wage claim, the Labor Commissioner has discretion to provide for a hearing, but may also choose to “ ‘take no further action on the complaint.’ ” (Maj. opn., ante, at p. 1128; see § 98, subd. (a).) Thus, it was at the time the agreement was signed, and remains today, entirely speculative whether the Berman procedure is of any value to Moreno.
Also speculative is the majority’s assertion that the Berman procedure is speedy, informal, and affordable. Regarding speed, we have previously observed that, because of “the time consumed by the various procedural steps” in Berman proceedings, there is “typically” a four-to six-month “delay” between the filing date and the Berman hearing. (Cuadra v. Millan (1998) 17 Cal.4th 855, 860 [72 Cal.Rptr.2d 687, 952 P.2d 704].) In this case, Sonic has documented cases in which commencement of a Berman hearing took a year or more.[3] (Sonic I, supra, 51 Cal.4th at p. 681, fn. 5.) After concluding the hearing, the Labor Commissioner has 15 days to file a decision, and that decision, assuming there is no appeal, does not become final for another 10 days. (§§ 98.1, subd. (a), 98.2, subds. (a), (d).) Either side may appeal from the Labor Commissioner’s decision and obtain a trial de novo in court. (§ 98.2, subd. (a).) Finally, the Labor Commissioner has discretion to “stay execution of any [final] judgment” for “good cause” and to “impose the terms and conditions of the stay of execution.” (§ 98.2, subd. (g).) Notably, the majority concedes that it is “unclear”—i.e., it is speculative—how the Labor Commissioner’s statutory discretion to stay execution of a final judgment impacts the Labor Commissioner’s duty to make efforts to ensure that judgments are satisfied. (Maj. opn., ante, at p. 1161.) More broadly, despite its claims about the Berman process’s “ ‘ “greater efficiency and speed” ’ ” (maj. opn., ante, at p. 1149), the majority also concedes that there is “no evidence” a wage claim will be resolved faster through the Berman process than through Sonic’s arbitration procedure. (Maj. opn., ante, at p. 1161.) This is not surprising; it is self-evident that the dual fora procedure under the Berman statutes—involving an administrative hearing potentially followed by a formal trial de novo in superior court—is not speedier or more streamlined than arbitration.
Regarding formality, a Berman hearing is not nearly as informal as the majority suggests. In 2002, when Moreno signed the arbitration agreement, the Labor Commissioner’s published policies and procedures stressed (and *1182 still stress today) that Berman hearings “are formal procedures” at which each party has the right to be represented by counsel, to present evidence, to testify under oath and have other witnesses testify under oath, to cross-examine the opposing party and witnesses, and to subpoena witnesses, documents and records. (Dept. of Industrial Relations, Div. of Labor Stds. Enforcement (DLSE), Policies and Procedures for Wage Claim Processing (2001 rev.) pp. 2-4; see DLSE, Policies and Procedures for Wage Claim Processing (2012 rev.) pp. 2-4.) Of course, the trial de novo in superior court to which either side is entitled after a Berman hearing would involve all the formalities of any litigation. It would also greatly increase the cost of the Berman procedure; as this court has observed, because a losing employer has a right to a trial de novo in superior court, “. . . Berman hearings may result in no cost savings to the employee.” (Gentry v. Superior Court (2007) 42 Cal.4th 443, 464 [64 Cal.Rptr.3d 773, 165 P.3d 556] (Gentry).)[4] Thus, whether a Berman procedure is speedy, informal, and low cost, either in the abstract or in comparison to Sonic’s arbitration procedure—which does not provide for a formal trial de novo in court—is entirely speculative.
Other asserted benefits of the Berman procedure are likewise speculative. The majority notes that, before the holding of a Berman hearing, the Labor Commissioner’s staff “ ‘may attempt to settle claims either informally or through a conference between the parties.’ ” (Maj. opn., ante, at p. 1128, italics added.) However, these efforts are entirely discretionary; in any given case, the Labor Commissioner may choose not to make any informal settlement attempts. The majority also emphasizes the requirement that an employer wishing to file an appeal must post an undertaking with the court in the amount of the award. (Maj. opn., ante, at p. 1129.) However, an employee who has agreed to arbitrate a controversy may obtain provisional remedies— such as an attachment or a preliminary injunction requiring payment of wages during the arbitration—in connection with the controversy.[5] (Code Civ. Proc., § 1281.8.) The majority next emphasizes the Berman procedure’s fee-shifting provision, which specifies that only unsuccessful appellants are liable for attorney fees. (Maj. opn., ante, at p. 1129.) As the majority notes, this provision may discourage an employer who is unsuccessful in the administrative proceeding from filing an appeal. (Maj. opn., ante, at p. 1130.) But it *1183 likewise may discourage an employee who is unsuccessful in the administrative proceeding—because he or she recovered either nothing at all or less than was sought—from filing an appeal. Of course, we have no evidence regarding the provision’s actual effect on either employers or employees, and any attempt to quantify that effect would be pure speculation. Moreover, although, as the majority notes, the current version of section 98.2, subdivision (c) provides that “[a]n employee is successful [on appeal] if the court awards an amount greater than zero” (§ 98.2, subd. (c); see maj. opn., ante, at p. 1129), this provision did not exist until the year after Moreno signed the arbitration agreement, so it is irrelevant to determining whether the arbitration agreement in this case was “unconscionable at the time it was made.”[6] (Civ. Code, § 1670.5, subd. (a).) The majority also emphasizes the Labor Commissioner’s statutory authority to represent claimants in de novo proceedings. (Maj. opn., ante, at p. 1129.) But that authority applies only to “a claimant financially unable to afford counsel” and, even as to such a claimant, is discretionary unless the claimant “is attempting to uphold the amount awarded by the Labor Commissioner and is not objecting to any part of the Labor Commissioner’s final order.” (§ 98.4.) Given all of these uncertainties, the trial court on remand can only speculate on what, if any, “value” the possibility of a Berman hearing had to Moreno at the time he signed the arbitration agreement.
My conclusion that, at the petition to compel stage, the value of the Berman procedure to a particular employee in a given case is speculative does not, as the majority asserts, “disparage^” that procedure. (Maj. opn., ante, at p. 1161.) It is, after all, the majority that is requiring the trial court to determine the potential “value” of the Berman procedure to Moreno. (Maj. opn., ante, at p. 1149.) Insofar as the majority presumes that the Berman procedure would be beneficial to Moreno and superior to Sonic’s arbitration procedure, and the majority places the burden on Sonic to introduce evidence showing otherwise (see maj. opn., ante, at p. 1147), the majority reverses our established approach to unconscionability. As earlier noted, Moreno, as the party asserting the defense, has the burden to prove unconscionability. (Pinnacle, supra, 55 Cal.4th at p. 236.) Thus, he should have the burden of proving the value of the Berman procedure in this case and the features, costs, and risks of Sonic’s arbitration procedure. (See Dryer v. Los Angeles Rams (1985) 40 Cal.3d 406, 415 [220 Cal.Rptr. 807, 709 P.2d 826] [“the *1184 party resisting arbitration” must show “that the rules under which arbitration is to proceed will deprive it of a fair procedure”].)
Indeed, my conclusion regarding the speculative benefit of a Berman proceeding and my consequent rejection of the majority’s case-by-case approach are fully consistent with our existing precedent, including the Sonic I majority’s opinion in this very case. In Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 111 [99 Cal.Rptr.2d 745, 6 P.3d 669], the court observed that “[t]uming a motion to compel arbitration into a mini-trial on the comparative costs and benefits of arbitration and litigation for a particular employee would not only be burdensome on the trial court and the parties, but would likely yield speculative answers.” In this case, the Sonic I majority extended this analysis to the comparative costs and benefits of arbitration and Berman procedures; in adopting a categorical prohibition against all Berman waivers as a matter of public policy, it expressly rejected the very case-by-case approach the majority now proposes precisely because a trial court, at the petition to compel “stage,” “is in no position to determine” “whether and to what extent a particular wage claimant will benefit from the Berman hearing process.” (Sonic I, supra, 51 Cal.4th at p. 683.) The majority fails to explain why, in the context of determining unconscionability—rather than public policy—during a petition to compel, a trial court is in any better position to determine “whether and to what extent a particular wage claimant will benefit from the Berman hearing process.” (Ibid.) The majority’s superficial and unpersuasive attempt to distance itself from Sonic I' s unqualified statement (maj. opn., ante, at pp. 1164-1165), and its embrace of the case-by-case approach it previously rejected in this very case, suggest that the majority, having been rebuffed by the high court in its first attack on this predispute arbitration agreement, is now simply searching for a new plan of attack.
For all of the preceding reasons, the approach to unconscionability the majority’s dicta outlines is hopelessly vague and unworkable, and is inconsistent with existing California law.
VI. The Majority’s Approach Is Inconsistent with, and Preempted by, the FAA.
In Sonic I, it was clear to me that the FAA, as authoritatively construed by the United States Supreme Court, preempts the Sonic I majority’s public policy rule. (Sonic I, supra, 51 Cal.4th at pp. 706-712 (dis. opn. of Chin, J.).) It is equally, if not more, clear that, under the high court’s decisions, the FAA preempts the unconscionability analysis the majority’s dicta now describes.
Not surprisingly, this conclusion most clearly appears from Concepcion, the very decision the high court directed us to consider when it vacated the *1185 judgment in Sonic I and remanded the case to us. There, as noted above, the high court held that the FAA preempts “the Discover Bank rule,” which “classified] most collective-arbitration waivers in consumer contracts as unconscionable.” (Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1746].) In adopting this rule, this court found that such waivers are “exculpatory” because damages in consumer cases are “often [too] small” to warrant individual action. (Discover Bank, supra, 36 Cal.4th at p. 161.) Thus, the court reasoned, class arbitrations often are “inextricably linked to the vindication of substantive rights” and provide “ ‘ “the only effective way to halt and redress . . . exploitation” ’ ” of consumers. (Ibid.) In Concepcion, the high court rejected that analysis, holding that the FAA precludes a state court from finding an arbitration provision unconscionable based on the need to protect “small-dollar claims that might otherwise slip through the legal system.” (Concepcion, supra, at p. __ [131 S.Ct. at p. 1753].) “States,” the court declared, “cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.” (Ibid.)
More recently, in American Express Co. v. Italian Colors Restaurant (2013) 570 U.S. __, __ [186 L.Ed.2d 417, 133 S.Ct. 2304, 2310] (Italian Colors), the high court further explored the “effective vindication” approach that underlies the majority’s unconscionability discussion. (See maj. opn., ante, at p. 1142 [Sonic I “did not address whether any barrier to vindicating such rights would make the arbitration agreement unconscionable”].) There, in resisting a motion to compel arbitration, the plaintiffs argued that a class action waiver in the relevant arbitration provision prevented them from effectively vindicating their rights under the federal antitrust laws “because they [had] no economic incentive to pursue their antitrust claims individually in arbitration.” (Italian Colors, supra, at p. __ [133 S.Ct. at p. 2310].) In support, they submitted a declaration showing that their maximum individual recovery would be approximately $38,000, and the cost of the expert analysis necessary to prove their claims would be at least several hundred thousand dollars and could exceed $1 million. (Id. at p. __ [133 S.Ct. at p. 2308].) The high court rejected the argument, explaining: The effective vindication “exception” to the FAA’s requirement that arbitration agreements be enforced according to their terms “finds its origin in the desire to prevent ‘prospective waiver of a party’s right to pursue statutory remedies,’ [citation]. That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. [Citation.] But the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy. [Citation.]” (570 U.S. at pp. __-__ [133 S.Ct. at pp. 2310-2311].) As Concepcion “established,” “the FAA’s command to enforce arbitration agreements trumps any interest in *1186 ensuring the prosecution of low-value claims.” (Italian Colors, supra, at p. __, fn. 5 [133 S.Ct. at p. 2312, fn. 5].) Because its “ ' “principal purpose” ’ is the enforcement of arbitration agreements according to their terms,” the FAA “favor[s] the absence of litigation when that is the consequence of a class-action waiver.” (570 U.S. at p. __, fn. 5 [133 S.Ct. at p. 2312, fn. 5].)
Under these binding precedents, the FAA preempts the approach to unconscionability the majority describes. To the extent an arbitration agreement “forbid[s] the assertion of certain statutory rights,” and “perhaps” to the extent it imposes “filing and administrative fees . . . that are so high as to ’ make access to the forum impracticable,” the FAA may not require enforcement of the agreement according to its term. (Italian Colors, supra, 570 U.S. at pp. __-__ [133 S.Ct. at pp. 2310-2311].) Short of that, under the FAA, an arbitration provision may not be invalidated as unconscionable because of a court’s subjective determination that a given arbitration procedure is not “affordable” and “accessible” (maj. opn., ante, at pp. 1148, 1149), or that its costs and risks “ ‘effectively’ ” render a wage claim not worth pursuing (maj. opn., ante, at p. 1142) and thus erect a “barrier to vindicating [wage] rights” (maj. opn., ante, at p. 1143). The FAA, as the high court has construed it, precludes state courts from finding an arbitration provision unconscionable based on the need to protect “small-dollar claims that might otherwise slip through the legal system,” even though that goal may be “desirable.” (Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1753].) It “trumps any interest in ensuring the prosecution of low-value claims” and “favor[s] the absence of litigation when that is the consequence of’ following its “command” to enforce arbitration agreements “according to their terms.” (Italian Colors, supra, at p. __, fn. 5 [133 S.Ct. at p. 2312, fn. 5], italics added.) The majority’s approach, which appears to go far beyond what the high court has declared the FAA permits, is therefore preempted.
The majority’s attempts to reconcile its dicta with these binding precedents are unpersuasivé. The majority first asserts that, “[bjecause the Berman statutes promote the very objectives of ‘informality,’ ‘lower costs,’ ‘greater efficiency and speed,’ and use of ‘expert adjudicators,’ ” its approach “does not pose an obstacle to the achievement of the FAA’s objectives as construed in Concepcion.” (Maj. opn., ante, at p. 1149.) However, it is obvious that using the unconscionability doctrine to invalidate arbitration agreements and mandate either Berman procedures or Berman-like procedures frustrates what Concepcion, like many high court decisions before it, identified as “[t]he ‘principal purpose’ of the FAA”: “to ‘ensur[e] that private arbitration agreements are enforced according to their terms.’ [Citations.]” (Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1748]; see Stolt-Nielsen S. A. v. AnimalFeeds Int’l Corp. (2010) 559 U.S. 662, 682 [176 L.Ed.2d 605, 130 S.Ct. 1758] [“we have said on numerous occasions that the central or *1187 ‘primary’ purpose of the FAA is to ensure that ‘private agreements to arbitrate are enforced according to their terms’ ”].) Concepcion and other high court decisions unequivocally establish that this “preeminent” principle (Dean Witter Reynolds Inc. v. Byrd (1985) 470 U.S. 213, 221 [84 L.Ed.2d 158, 105 S.Ct. 1238]) applies even to adhesive contracts, even when the state seeks to vest initial jurisdiction of the dispute in another forum, and even if arbitration is not the most streamlined means of resolving a dispute. (Concepcion, supra, at pp. __-__ [131 S.Ct. at pp. 1748-1749]; Preston v. Ferrer (2008) 552 U.S. 346, 349-350 [169 L.Ed.2d 917, 128 S.Ct. 978]; Dean Witter Reynolds Inc. v. Byrd, supra, at pp. 217-221.)
But here, because arbitration is more streamlined than the Berman process, the majority’s approach also frustrates other FAA objectives the high court emphasized in Concepcion. (Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1749].) As explained above (ante, pp. 1179-1180), because the procedural steps of the Berman process cause appreciable delay before an administrative hearing is even held and because any party to that process is entitled to a formal trial de novo in superior court after a Berman hearing, the majority’s approach is likely to produce procedures that are less efficient, more costly, more formal, and more time consuming than arbitration. In asserting otherwise, the majority never factors in the trial de novo option under the Berman statutes; it makes no attempt to explain how a procedure involving an administrative hearing followed by a full, formal trial de novo in superior court does not interfere with the attributes of arbitration it identifies: lower costs, greater efficiency and speed, and informality. (Maj. opn., ante, at p. 1143.) Moreover, Concepcion does not, as the majority suggests, identify the “use of ‘expert adjudicators’ ” as a benefit of arbitration (maj. opn., ante, at p. 1149); it identifies “ ‘the ability to choose expert adjudicators’ ” (Concepcion, supra, at p. __ [131 S.Ct. at p. 1751], italics added). The Berman process eliminates this choice and, contrary to the parties’ agreement, imposes a particular adjudicator. Thus, contrary to the majority’s assertion (maj. opn., ante, at p. 1149), the majority’s approach does contravene Concepcion's preemption principles by “ ‘standing] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress’ ” in passing the FAA (Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1753], italics added).
Moreover, Italian Colors establishes that the very process the majority prescribes for determining the accessibility and affordability of the arbitration procedure in a given case poses such an obstacle. There, the high court rejected an approach that would “ ‘require courts to proceed case by case to tally the costs and burdens to particular plaintiffs in light of their means’ ” and “ ‘the size of their claims.’ ” (Italian Colors, supra, 570 U.S. at pp. __-__ [133 S.Ct. at pp. 2311-2312].) “Such a preliminary litigating hurdle,” the court explained, “would undoubtedly destroy the prospect of *1188 speedy resolution that arbitration in general and bilateral arbitration in particular was meant to secure. The FAA does not sanction such a judicially created superstructure.” (Id. at p. __ [133 S.Ct. at p. 2312].) The majority’s case-by-case inquiry is the very type of “superstructure” the FAA prohibits. (570 U.S. at p. __ [133 S.Ct. at p. 2312].)
Nothing supports the majority’s unsupported speculation that its case-by-case inquiry will be different, i.e., that a minitrial on the comparative costs and benefits of arbitration and the Berman procedure for a particular employee will not impose a preliminary litigating hurdle. (Maj. opn., ante, at p. 1158.) Under the majority’s approach, the parties will be submitting evidence on any number of issues, including the following: what arbitration procedure the employee can currently afford and whether that “materially differ[s]” from what he should or could have afforded when the parties signed the arbitration agreement (maj. opn., ante, at p. 1164); what were (and perhaps are) the rules that govern the arbitration; what will the unspecified arbitration procedures be; are Berman procedures “in practice, rarely used and generally unavailable to the employee” (maj. opn., ante, at p. 1160); how long will it take to resolve the employee’s wage claim through the Berman procedure, including a possible trial de novo in superior court, and how long will it take to resolve the wage claim through the arbitration procedure (maj. opn., ante, at p. 1161); how much will it cost to resolve the employee’s wage claim through the Berman procedure, including a possible trial de novo, and how much will it cost to resolve the wage claim through the arbitration procedure (maj. opn., ante, at p. 1161); how often do parties request a trial de novo (maj opn., ante, at p. 1167)? Given the parties’ need to litigate all of these matters in the trial court, and the availability of appellate review of the trial court’s decision (Code Civ. Proc., § 1294, subd. (a); Parada, supra, 176 Cal.App.4th at p. 1560), the majority’s “anticipation]” that its approach will not create the kind of preliminary, arbitration-delaying litigating hurdle Italian Colors discussed (maj. opn., ante, at p. 1157) is just wishful thinking. This conclusion reflects a “lack of confidence” only in the majority’s unwarranted optimism, not, as the majority asserts, “in the ability of our trial courts.” (Maj. opn., ante, at p. 1167.)
In any event, I disagree with the majority that, so long as states and their courts do not interfere with fundamental attributes of arbitration, Concepcion allows them to invalidate arbitration agreements as unconscionable based on a policy judgment that the arbitration procedure is not adequately affordable and accessible. (Maj. opn., ante, at pp. 1144-1158.) Under the majority’s narrow reading of Concepcion, the FAA’s savings clause permits states, for policy reasons, to impose all sorts of arbitration procedures that are not within the terms of the parties’ arbitration agreement, so long as those procedures do not interfere with fundamental attributes of arbitration. This view is contrary to the high court’s statement in Concepcion that the FAA *1189 embodies a “ ‘liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary,’ [citations].” (Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1749], italics added.) It is also inconsistent with Concepcion’s statement that, although a state’s unconscionability rules may “address[] the concerns that attend contracts of adhesion,” they may not “conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms.” (Id. at p. __, fn. 6 [131 S.Ct. at p. 1750, fn. 6], italics added.) Thus, under the FAA, a state court may not, based on principles of unconscionability, refuse to enforce an arbitration agreement according to its terms simply because the arbitration procedure lacks features the Legislature, as a matter of policy, established for “a particular class”— employees—to “mitigate the risks and costs of pursuing” wage claims (maj. opn., ante, at p. 1155) or to make recovery of wages owed more “accessible, informal, and affordable” (maj. opn., ante, at p. 1157). In enacting the FAA, Congress “intended to foreclose [such] legislative attempts to undercut the enforceability of arbitration agreements.” (Southland Corp. v. Keating (1984) 465 U.S. 1, 16 [79 L.Ed.2d 1, 104 S.Ct. 852] (Southland).)
Indeed, the majority’s assertion that its weighing approach to unconscionability applies, not generally, but only where “a particular class has been legislatively afforded specific protections in order to mitigate the risks and costs of pursuing certain types of claims . . .” (maj. opn., ante, at p. 1152) further demonstrates that the majority’s approach is inconsistent with, and therefore preempted by, the FAA. The majority premises its approach on the FAA’s savings clause, which provides that arbitration agreements “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” (9 U.S.C. § 2; see maj. opn., ante, at p. 1143.) In Southland, Justice Stevens invoked this clause to justify the prohibition against arbitration we had read into California’s Franchise Investment Law (Corp. Code § 31000 et seq.). (Southland, supra, 465 U.S. at pp. 18-22 (conc. & dis. opn. of Stevens, J.).) He reasoned that, because a contract void as contrary to public policy is revocable at law or in equity, the FAA does not preempt a state law that “provid[es] special protection” to franchisees by declaring agreements to arbitrate claims under the Franchise Investment Law void as a matter of public policy. (465 U.S. at pp. 21-22 (conc. & dis. opn. of Stevens, J.).) The majority in Southland rejected this view, finding that the “defense to arbitration” we had read into the Franchise Investment Law was “not a ground that exists at law or in equity ‘for the revocation of any contract’ but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Investment Law.” (465 U.S. at p. 16, fn. 11.) It also rejected the view that “ ‘a state policy of providing special protection for franchisees . . . can be recognized without impairing the basic purposes of the [FAA]’ [Citation.].” *1190 (Id. at p. 17, fn. 11.) “If we accepted this analysis,” the court explained, “states could wholly eviscerate congressional intent to place arbitration agreements ‘upon the same footing as other contracts,’ [citation], simply by passing statutes such as the Franchise Investment Law. We . . . reject[] this analysis because it is in conflict with the [FAA] and would permit states to override the declared policy requiring enforcement of arbitration agreements.” (Ibid.)
The majority’s approach is inconsistent with Southland. Like the defense to arbitration we read into the Franchise Investment Law, the defense to arbitration the majority now reads into the Berman statutes is not a ground that exists at law or in equity for the revocation of any contract, but is, according to the majority’s own assertion, merely a ground that exists for the revocation of arbitration provisions in contracts subject to the Berman statutes or to other statutes that “legislatively” afford to “a particular class . .. specific protections in order to mitigate the risks and costs of pursuing certain types of claims.” (Maj. opn., ante, at p. 1152.) Moreover, it “conflicts] with” the FAA by enabling our Legislature, “simply by passing statutes such as” the Berman statutes, “to override the declared [federal] policy requiring enforcement of arbitration agreements” and to “wholly eviscerate congressional intent to place arbitration agreements ‘upon the same footing as other contracts.’ ” (Southland, supra, 465 U.S. at pp. 16-17, fn. 11.) Under Southland, it is, therefore, preempted.
Given this analysis, I disagree with the majority’s broad assertion that the FAA does not preempt unconscionability rules that apply “uniquely in the context of arbitration.” (Maj. opn., ante, at p. 1143.) As the high court has held, in cases where the FAA applies, a state court may not, “in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.” (Perry v. Thomas (1987) 482 U.S. 483, 492, fn. 9 [96 L.Ed.2d 426, 107 S.Ct. 2520].) In other words, as Concepcion explains, “a [state] court may not ‘rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable ....’” (Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1747].) The majority’s approach violates this principle insofar as it departs from our existing law of unconscionability and crafts different unconscionability rules for arbitration agreements.[7] Under the high court’s decisions, the majority cannot invent a unique rule for implementing a legislative policy decision to *1191 confer “specific protections” on “a particular class” (maj. opn., ante, at p. 1152) and avoid preemption simply by calling that rule a rule of unconscionability.
Finally, for two reasons, I also disagree with the majority’s view that the high court’s FAA decisions allow us to “consider the value of benefits provided by the Berman statutes” in determining unconscionability. (Maj. opn., ante, at p. 1149.) First, insofar as this approach will require a complex and speculative inquiry into the purported value of the Berman statutes to a particular employee at the time the contract was signed, it is, as earlier explained, inconsistent with Italian Colors, supra, 570 U.S. at pages __-__ [133 S.Ct. at pp. 2311-2312], Second, even were it possible for a trial court to assign any meaningful value to these speculative benefits, considering that value would be fundamentally inconsistent with Concepcion and Italian Colors. In the former, the high court held that state courts may not base a finding of unconscionability on the value of class arbitration to litigants with “small-dollar claims.” (Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1753].) In the latter, the court, expressly applying Concepcion, held that an arbitration agreement may not be invalidated based on individualized proof that what the plaintiffs have waived—the right to class arbitration—is so valuable that, without it, the costs of pursuing their claims are prohibitive. (Italian Colors, supra, 570 U.S. at pp. ___-___ [133 S.Ct. at pp. 2311-2312].) These binding interpretations of the FAA preclude us from invalidating an arbitration provision as unconscionable based on the supposed value to a particular employee of the Berman procedure. As Concepcion “established,” “the FAA’s command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims.” (Italian Colors, supra, at p. __, fn. 5 [133 S.Ct. at p. 2321, fn. 5].) Thus, it is the high court, not I, that has construed the FAA to require adherence to its primary purpose—enforcing arbitration agreements according to their terms—“ ‘at the expense of harming other values that the legislature deems important.’ ” (Maj. opn., ante, at p. 1167.) The court could hardly have been clearer in Italian Colors', the FAA “favor[s] the absence of litigation when that is the consequence of’ following its “command” to enforce arbitration agreements “according to their terms.” (Italian Colors, supra, at p. __, fn. 5 [133 S.Ct. at p. 2312, fn. 5].)
For all of the above reasons, the majority’s approach is inconsistent with the FAA. Although the majority purports to be faithfully applying “the FAA’s saving clause” (maj. opn., ante, at p. 1142), which permits arbitration agreements “to be invalidated by ‘generally applicable contract defenses, such as . . . unconscionability’ ” )(Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1746]; see 9 U.S.C. § 2), it is, in reality and contrary to Concepcion, applying the unconscionability defense “in a fashion that disfavors arbitration” (Concepcion, at p. __ [131 S.Ct. at p. 1747]) and that *1192 “derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue” (id. at p. __ [131 S.Ct. at p. 1746]). Therefore, the majority’s unconscionability approach is preempted by the FAA.
VII. Conclusion.
In Concepcion, the high court, in invalidating another of this court’s unconscionability rules for refusing to enforce arbitration provisions, first noted that “judicial hostility” towards arbitration has “manifested itself in ‘a great variety’ of ‘devices and formulas.’ ” (Concepcion, supra, 563 U.S. at p. __ [131 S.Ct. at p. 1747].) Then, in the very next sentence, it commented: “And although these statistics are not definitive, it is worth noting that California’s courts have been more likely to hold contracts to arbitrate unconscionable than other contracts. [Citations.]” (Ibid.) Ignoring the high court’s clear message and undeterred by another reversal, today, the majority “ ‘formulates]’ ” yet another “ ‘device[]’ ” (ibid.) for invalidating arbitration agreements: a case-by-case, hopelessly vague, subjective, and indeterminable assessment of (1) the value of the benefits of the Berman procedure to a particular employee and (2) the accessibility and affordability to that employee of the specific arbitration procedure to which he or she has agreed. The majority’s approach is inconsistent with California law and is preempted by the FAA. I therefore dissent from that part of the majority’s opinion and from the judgment.
Baxter, J., concurred.

 All further unlabeled statutory references are to the Labor Code.

 The majority’s view that it is enough to determine “what an employee can afford when a wage dispute arises” (maj. opn., ante, at p. 1164), “is contrary to statute.” (Parada, supra, 176 Cal.App.4th at p. 1583.)

 Under the Berman statutes, the Labor Commissioner has at least 90 days after deciding to proceed with a hearing actually to hold it, and may “postpone or grant additional time before setting a hearing [upon] findpng] that it would lead to an equitable and just resolution of the dispute.” (§ 98, subd. (a).) The Labor Commissioner’s “understanding” of this provision is that a simple request by one of the parties constitutes an appropriate ground for delay. (Cuadra v. Millan, supra, 17 Cal.4th at p. 860.)

 Gentry was not, as the majority states, discussing whether “thousands of individual Berman hearings would . . . result in cost savings as compared to a single class proceeding.” (Maj. opn., ante, at p. 1161.) It was explaining that a losing employer’s right to a trial de novo under the Berman procedure can negate any cost savings of the procedure “to the employee,” i.e., to an individual employee. (Gentry, supra, 42 Cal.4th at p. 464, italics added.)

 If, as the majority asserts, the purpose of the Berman undertaking requirement is to counteract an employer’s efforts “to avoid enforcement of the judgment” (maj. opn., ante, at p. 1129), then it is unclear why the majority finds it significant that obtaining provisional relief requires a showing that “ ‘the award to which the applicant may be entitled may be rendered ineffectual without provisional relief.’ ” (Maj. opn., ante, at p. 1162.)

 In July 2002, when Moreno signed the agreement, the law was unclear as to whether an appealing employee was successful if the award on appeal was not greater than the administrative award, and we had granted review to resolve a split of published authority on the issue. (Smith v. Rae-Venter Law Group, rev. granted Aug. 29, 2001, S098760.) In December 2002, we held that an appealing employee is “unsuccessful” within the meaning of the fee statute if he or she does not obtain a “more favorable" judgment on appeal. (Smith v. Rae-Venter Law Group (2002) 29 Cal.4th 345, 351, 370 [127 Cal.Rptr.2d 516, 58 P.3d 367].) The next year, the Legislature added the sentence the majority quotes. (Stats. 2003, ch. 93, § 2, p. 790.)

 Whether, under current high court precedent, the FAA preempts any of the other unique unconscionability rules the majority’s dicta discusses (maj. opn., ante, at pp. 1143-1145) is not before us in this case.